THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

[Cite as State *v.* Williams (1988), 38 Ohio St. 3d 346.]

(No. 86-607—Submitted December 1, 1987—Decided September 14, 1988.)

*Hyman Friedman,* county public defender, *Patricia Walsh* and *David L. Doughten,* for appellant.

LOCHER, J. In accordance with R.C. 2929.05(A), we review the legal issues raised by appellant to independently determine whether the aggravating circumstance outweighs any mitigating factors beyond a reasonable doubt, and to determine whether the sentence of death is proportional in this case. For the reasons that follow, we uphold appellant's conviction and sentence.

## I

Our analysis begins by addressing the propositions of law advanced by appellant. Because of the gravity of the sentence that has been imposed on appellant, we have reviewed the record with care for any errors that may not have been brought to our attention. In addition, we have considered any pertinent legal arguments which were not briefed or argued by the parties.

## A

Appellant's first proposition of law asserts that the trial court erred when it admitted the unsworn, out-of-court statement of a witness. At trial, Dwight Brown was called as a witness by the prosecutor, but he refused to be sworn in or to testify. The trial court apparently cited him for contempt, but to no avail. Later, the trial court overruled the objections of defense counsel and admitted a statement made by Brown to police which implicated appellant in the crime. Defense counsel argued the statement was hearsay, but

*John T. Corrigan,* prosecuting attorney, and *Timothy J. McGinty,* for appellee.

the trial court ruled it was admissible for the limited purpose of proving that Brown had made the statement. During closing arguments, the state read the entire statement to the jury without objection by defense counsel. The trial court then deviated from its original ruling on the statement's admissibility, and instructed the jury that it could use the statement for the sole purpose of judging the credibility of other witnesses.

We must first consider whether the statement was properly admitted into evidence. "Hearsay" is defined in Evid. R. 801(C) as an out-of-court statement that is "offered in evidence to prove the truth of the matter asserted." At trial, the state argued the statement was admissible because it was offered solely to prove that Brown had given a statement to police. A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents.[4] However, the state did not use Brown's statement for this purpose. Instead, the state read it to the jury during closing arguments in an attempt to bolster the credibility of the testimony of other witnesses, and the court instructed the jury that it could use the statement for that purpose. As a result, the statement was hearsay because its contents were used to prove the truth of the matter asserted, namely the testimony of the other witnesses. We therefore reject the state's argument that the statement was not hearsay.

In the alternative, the state urges that the statement meets the requirements of the hearsay exception in Evid. R. 804. While we agree that Brown qualifies as an unavailable witness under Evid. R. 804(A)(2),[5] we find that his statement does not fall within any of the hearsay exceptions listed in Evid. R. 804(B).[6] Accordingly, appellant's constitutional right to confront those who testify against him was violated when the trial court erroneously permitted the state to read the hearsay statement to the jury, and when it permitted the jury to use the

---

[4] For example, an out-of-court statement which would otherwise be considered hearsay may be admitted to show the existence of a verbal act (such as the acceptance of an offer) to give meaning to otherwise ambiguous conduct, to show the effect on the hearer, and to show the mental state of the declarant. Giannelli, Ohio Evidence Manual (1982) 7-8, Section 801.06.

[5] Evid. R. 804(A)(2) provides, in relevant part, that a declarant is unavailable if he "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so * * *."

[6] Evid. R. 804(B) lists five exceptions to the hearsay rule: (1) former testimony, (2) statement under belief of impending death, (3) statement against interest, (4) statement of personal or family history, and (5) statement by a deceased, deaf-mute, or incompetent person. Note that Evid. R. 804(B)(5) differs from Fed. Evid. R. 804(b)(5), which is a residual or catchall provision permitting other exceptions.

In admitting Brown's statement, it appears that the trial court was confused over the application of Evid. R. 804 and that it erroneously concluded that the exceptions listed in Evid. R. 804(B) are not exclusive of any others. In Ohio, a statement that would otherwise be excluded as hearsay may be admitted if the declarant is "unavailable" as defined in Evid. R. 804(A) *and* the statement falls within one of the five exceptions in Evid. R. 804(B), as noted above.

Of those exceptions, Brown's statement could only conceivably fall within the statement-against-interest exception provided in Evid. R. 804(B)(3). However, the statement does not meet the requirement that it have been against Brown's pecuniary, proprietary or penal interest at the time of its making. See Giannelli, *supra,* at 60, Section 804.10.

statement to judge the credibility of other witnesses.

We now turn to the issue of whether this violation of appellant's right to confrontation is grounds for reversal of his conviction. With respect to violations of the Confrontation Clause, the United States Supreme Court recently ruled as follows:

"As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one. *E.g., United States* v. *Hasting,* 461 U.S. 499, 508-509 (1983); *Burton* v. *United States,* 391 U.S. 123, 135 (1968). In *Chapman* [v. *California,* 386 U.S. 18 (1967)], this court rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction. The Court reasoned that in the context of a particular case, certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the fact-finding process at trial. Since *Chapman,* we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *E.g., United States* v. *Hasting, supra* (improper comment on defendant's silence at trial); *Moore* v. *Illinois,* 434 U.S. 220, 232 (1977) (admission of identification obtained in violation of right to counsel); *Harring-*

*ton* v. *California,* [395 U.S. 250 (1969)] (admission of nontestifying codefendant's statement). The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, * * * and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigators to abuse the judicial process and bestirs the public to ridicule it')." *Delaware* v. *Van Arsdall* (1986), 475 U.S. 673, 681.

The United States Supreme Court went on to conclude that violations of the Confrontation Clause "[do] not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Id.* at 682. Consistent with the foregoing, this court stated the following in paragraphs three and six of the syllabus in *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323:

"To be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt.

"Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt."[7]

---

[7] This court has repeatedly held that it must affirm where any alleged constitutional errors are found to be harmless beyond a reasonable doubt. See, *e.g., State* v. *Gilmore* (1986), 28 Ohio St. 3d 190, 28 OBR 278, 503 N.E. 2d 147; *State* v. *Rahman* (1986), 23 Ohio St. 3d 146, 23 OBR 315, 492 N.E. 2d 401; *State* v. *Mann* (1985), 19 Ohio St. 3d 34, 19 OBR 28, 482 N.E. 2d 592;

*State* v. *Zimmerman* (1985), 18 Ohio St. 3d 43, 18 OBR 79, 479 N.E. 2d 862, syllabus; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 264, 15 OBR 379, 400, 473 N.E. 2d 768, 791; *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883; *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 166-167, 5 OBR 380, 386, 450 N.E. 2d 265, 270-271, at fn. 5; *State* v. *Eubank* (1979), 60

We are firmly convinced that the error in the admission of Brown's statement was harmless beyond a reasonable doubt. The contents of the statement were largely cumulative of the testimony of other witnesses at appellant's trial. The statement was primarily concerned with the events that took place on Christmas Eve at Berry's apartment. Four other witnesses testified about the same events, and the contents of Brown's statement merely corroborated their testimony. Additionally, it is clear that had Brown's statement been properly excluded, the remaining evidence constituted overwhelming proof of appellant's guilt. As a result, we reject appellant's argument that he was prejudiced by the error.

### B

In his second proposition of law, appellant complains that the trial court erred when it allowed the state to cross-examine him about his prior convictions, the details of the crimes for which he was convicted, and other criminal acts. With respect to the prior convictions of appellant, we find that the state's inquiries were permissible because appellant testified about them during direct examination, thereby opening the door for the state to question him about them on cross-examination. However, we find that the state's inquiries concerning the circumstances surrounding the crimes for which appellant was convicted and other instances of criminal conduct by appellant were impermissible. Both the record and the state's brief indicate that the prosecutor's reason for making the inquiries was not to impeach appellant by attacking his credibility, but was to show appellant's bad moral character and propensity to commit violent crimes.[8]

Generally, evidence of the bad character of a witness is inadmissible. Evid. R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, R.C. 2945.59.[9]

In *State* v. *Mann* (1985), 19 Ohio St. 3d 34, 19 OBR 28, 482 N.E. 2d 592,

---

Ohio St. 2d 183, 14 O.O. 3d 416, 398 N.E. 2d 567; *State* v. *Adams* (1978), 53 Ohio St. 2d 223, 7 O.O. 3d 393, 374 N.E. 2d 137, vacated in part on other grounds (1978), 439 U.S. 811; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623, vacated in part on other grounds (1978), 438 U.S. 910; and *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 2 O.O. 3d 249, 357 N.E. 2d 1035, paragraph seven of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911.

[8] Accordingly, we do not address the issue of whether the state's inquiries might have been permissible under Evid. R. 608(B), which, under certain circumstances, allows a witness to be questioned about specific instances of conduct by that witness for the purpose of impeaching the witness' credibility.

[9] R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior to or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

paragraph one of the syllabus, this court held:

"Prosecution evidence that a defendant has committed other crimes, wrongs or acts *independent of the offense for which he is on trial* is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts." (Emphasis added.) See, also, *State* v. *Adams* (1978), 53 Ohio St. 2d 223, 7 O.O. 3d 393, 374 N.E. 2d 137, vacated in part on other grounds (1978), 439 U.S. 811; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623, vacated in part on other grounds (1978), 438 U.S. 910; and *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 72 O.O. 2d 37, 330 N.E. 2d 720.

In the case at bar, the details of the crimes for which appellant was convicted and the other criminal acts about which the state questioned appellant were inadmissible evidence because they were acts independent of the offense for which appellant was tried below, and because the state had no purpose in inquiring about them other than to show appellant's violent nature and penchant for crime.[10]

Although the state clearly overstepped the bounds of proper judicial inquiry in cross-examining appellant, we are unable to agree that the error was materially prejudicial to appellant. After a thorough review of the record, we do not doubt that the remaining, properly introduced evidence overwhelmingly establishes appellant's guilt. See *Delaware* v. *Van Arsdall, supra;* and *State* v. *Williams, supra.* Because this error was harmless beyond a reasonable doubt, we find appellant's contention not to be well-taken.[11]

## C

In his third proposition of law, appellant maintains he was denied a fair trial when the prosecutor attacked the ability and integrity of his defense counsel. The record discloses that both counsel deliberately went out of their way to impugn each other's character, ethics and integrity. It is the opinion of this court that appellant was not materially prejudiced by this conduct.

---

[10] The state urges that this evidence was admissible because appellant testified during direct examination about "his successful hoodlum career." Evid. R. 404(A) provides:

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith *on a particular occasion,* subject to the following exceptions:

"(1) *Character of accused.* Evidence of a *pertinent* trait of his character offered by an accused, or by the prosecution to rebut the same is admissible * * *." (Emphasis added.)

The state's argument is not well-taken because the record shows that while appellant indulged in a certain amount of self-aggrandizement, he did not testify that on a particular occasion he had acted in conformity with a pertinent character trait, such as being law-abiding or nonviolent. As a result, he did not open the door for the state to introduce rebutting evidence of appellant's bad character or violent propensities.

[11] The court of appeals found that appellant did not timely object to the state's questioning of appellant, and applied a plain error test rather than a harmless error test. Upon review of the record, we find that defense counsel made several specific objections and also a continuing objection during appellant's cross-examination by the state. Furthermore, several unrecorded bench conferences were held between the judge and counsel at the time. Accordingly, we are inclined to give appellant the benefit of the doubt on the issue of whether timely objections were made, in spite of defense counsel's failure to make any motions to strike or for curative instructions.

Furthermore, we believe that neither party should benefit from such objectionable and reprehensible behavior. We therefore overrule this proposition of law.

### D

Appellant in his fourth proposition of law urges that the trial court erred by limiting the cross-examination of two witnesses. He contends it was improper to limit Lynn Anderson's testimony of past drug abuse and Alfred Sanford's testimony concerning pending charges against him. We find no merit in this proposition.

With regard to Anderson, the trial court did not limit cross-examination concerning his drug use. Rather, the court sustained the state's objection to a question by defense counsel about whether Anderson used drugs. Also, it is difficult to see how appellant was prejudiced since the testimony at trial, when viewed as a whole, indicated that Anderson was a drug user who had participated in the holdup of Berry.

Likewise, appellant was not prejudiced in any meaningful way when he was denied the opportunity to reveal pending charges against Sanford. Indeed, during the course of the trial it was revealed that Sanford had fabricated the information leading to the murder conspiracy charge against appellant, necessitating the withdrawal of the charge by the state. It stretches credulity to assert that the jury was not given the opportunity to ascertain Sanford's credibility.

Appellant's reliance on *State* v. *Hannah* (1978), 54 Ohio St. 2d 84, 8 O.O. 3d 84, 374 N.E. 2d 1359, is misplaced. Therein, the court held that where a conviction turns substantially upon identification of the defendant as the guilty person by the victim-witness, it is prejudicial error to place unreasonable limitations upon a complete cross-examination. Here, neither witness was the victim, and the identification of the appellant as the guilty person did not turn substantially on their testimony.

Since appellant was afforded sufficient opportunity to challenge the credibility of the two witnesses, we overrule this proposition of law.

### E

In his fifth proposition of law, appellant insists that he was denied a fair trial when a witness, Merle Berry, was allowed to read her entire statement to the police into the record. On direct examination, Berry testified that she learned of Moore's death on Christmas Eve. On cross-examination, defense counsel attempted to impeach her testimony by suggesting she told the police she learned Moore was dead on Christmas Day. On redirect examination, and over appellant's objection, Berry was permitted to read her entire statement to the police into the record.

Evid. R. 801(D) provides that:

"A statement is not hearsay if:

"(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.] * * *"

Berry's statement was inadmissible hearsay. To fit within the Evid. R. 801(D)(1)(a) hearsay exception, the prior inconsistent statement contained in Berry's statement to the police had to have been offered by defense counsel during cross-examination in order to impeach her testimony on direct examination. Here, defense counsel did not use her statement to the police for impeachment purposes. He merely suggested that Berry had given the

police a different story. Therefore, the statement was improperly admitted on redirect examination.

Nevertheless, in view of the cumulative nature of the contents of Berry's statement with respect to the other, properly admitted evidence at trial, this error was harmless beyond a reasonable doubt. See *Delaware* v. *Van Arsdall, supra;* and *State* v. *Williams, supra.* The jury clearly would have convicted appellant even if this hearsay statement had not been admitted. This proposition of law is accordingly rejected.

### F

Appellant claims in his sixth proposition of law he was denied a fair trial when the trial court admitted a series of letters written by him and addressed to his girlfriend, Berry. In the letters, appellant pleaded with Berry not to "burn [him]" and to "stay strong." The letters were admitted to bolster Berry's credibility, but appellant argues that certain lewd passages in them should have been deleted because reading them might have aroused the prejudice of the jury.

The better procedure would have been to delete the lewd passages from the letters. However, we find that appellant has not persuasively demonstrated that he was prejudiced by their inclusion, inasmuch as certain portions were not read aloud at trial and the chances that appellant was convicted as a result of their inclusion are remote at best. Hence, we find this proposition of law to be devoid of merit.

### G

In his seventh proposition of law, appellant contends that the trial court erred when it allowed the testimony of a rebuttal witness on a collateral matter. During cross-examination, appellant was asked whether he had used a child to complete a drug transaction, and he replied that he felt strongly that children should not be used. On rebuttal, the state, over appellant's objections, questioned a child who testified that she had been involved with appellant in a drug transaction at least once. The state contends that the testimony of the rebuttal witness was probative of appellant's truthfulness, or alternatively, that the admission of the testimony was within the discretion of the trial court.

Evid. R. 608(B) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. * * *"

Thus, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct, with the exception of certain criminal convictions as provided in Evid. R. 609. Specific instances of a witness' conduct "may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid. R. 608(B)." *State* v. *Kamel* (1984), 12 Ohio St. 3d 306, 12 OBR 378, 466 N.E. 2d 860, paragraph two of the syllabus. See, also, *State* v. *Leuin* (1984), 11 Ohio St. 3d 171, 11 OBR 486, 464 N.E. 2d 552.

When it called the rebuttal witness, the state was obviously trying to prove a specific instance of appellant's conduct by extrinsic means. The trial court erred in permitting the

testimony of the rebuttal witness. This error was harmless beyond a reasonable doubt, however, because there was no reasonable possibility that the rebuttal witness' testimony contributed to appellant's conviction in light of the overwhelming proof of his guilt. See *Delaware* v. *Van Arsdall, supra; State* v. *Williams, supra.* We find this proposition of law to be meritless.

## H

Appellant in his eighth and fourteenth propositions of law attacks the testimony of the victim's mother. Appellant argues her testimony was inadmissible because it was both irrelevant and prejudicial, citing *State* v. *White* (1968), 15 Ohio St. 2d 146, 44 O.O. 2d 132, 239 N.E. 2d 65.

Appellant's reliance on *White* is misplaced. There, this court held that the introduction of evidence of a victim's background or surviving family was error because such evidence was irrelevant to the guilt or innocence of the accused. The testimony of the victim's mother in this case was distinguishable. She testified that on Christmas Eve she arrived home at 10:00 p.m., that she heard the television in the victim's room and assumed he was home, and that after the murder, the appellant, who had previously been friendly, avoided her. The testimony did not concern the victim's background or surviving family, and it does not appear to have been relied on by the state to elicit the jury's sympathy. Instead, it focuses on the relevant events on the night the victim was murdered. We therefore conclude that the testimony was not improper, and we overrule these propositions of law.

## I

In his ninth proposition of law, appellant challenges his conviction by asserting that it was based on insufficient evidence. Specifically, he argues that the testimony put forward by his accomplice, Darby, was suspect. He cites R.C. 2923.03(D), which, at the time relevant herein, stated that "[n]o person shall be convicted of complicity * * * solely upon the testimony of an accomplice, unsupported by other evidence."[12]

This court held in paragraph two of the syllabus in *State* v. *Pearson* (1980), 62 Ohio St. 2d 291, 16 O.O. 3d 332, 405 N.E. 2d 296, that:

"In order for the prosecution to satisfy the corroboration requirement of R.C. 2923.03(B), independent evidence must support an accomplice's testimony, and must tend to identify the accused with the alleged crime or must tend to identify the accused as a guilty actor. (*State* v. *Myers,* 53 Ohio St. 2d 74, approved and followed.)"

On the basis of the record, we find that there was sufficient independent evidence corroborating Darby's testimony to support appellant's conviction. One of the victim's brothers testified that appellant told him he had a contract out on the victim, and that he could not stop it. Another witness who was at Berry's apartment on the night of the murder testified that she heard appellant tell Berry that Moore's death was her Christmas present. Berry testified that when Darby came to her apartment after the murder, appellant told him he would not give him any money until appellant confirmed Moore's death; that she heard appellant ask Darby whether he got rid of the pistol the way appellant wanted

---

[12] R.C. 2923.03(D) has been subsequently revised to provide a specific jury instruction. It is not analogous to the former provision.

him to; and that when she told appellant she wanted to leave him, appellant said he loved her and that he had even killed a man for her.

From this evidence, the jury could reasonably conclude that all the elements of the offense had been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132. See, also, *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 9 O.O. 3d 152, 378 N.E. 2d 1049. As a result, this proposition of law is unacceptable.

### J

Appellant claims in his tenth proposition of law that he was denied the speedy trial guaranteed him by R.C. 2945.71. In pertinent part, R.C. 2945.71(C) states that:

"A person against whom a charge of felony is pending:

"* * *

"(2) Shall be brought to trial within two hundred seventy days after his arrest."

Appellant was arrested on October 25, 1983, and his trial commenced on June 18, 1984. The total time elapsed between appellant's arrest and trial was, by appellant's calculation, well over the two-hundred-seventy-day statutory requirement. However, as the court of appeals correctly found, the statute was tolled from November 3, 1983, the date appellant filed a motion to waive the special venire, to February 17, 1984, the date the state obtained a writ of mandamus from the court of appeals reversing the trial court's allowance of that motion. R.C. 2945.72 provides in part that:

"The time within which an accused must be brought to trial * * * may be extended only by the following:

"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]"

Here, appellant's motion to waive the special venire was the action made by the accused which necessitated the period of delay, during which the state sought a writ of mandamus reversing the trial court's decision granting that motion. Accordingly, we find that this tolling of the speedy trial statute placed appellant's total jail time awaiting trial well within the two-hundred-seventy-day requirement. This proposition of law is overruled.

### K

Appellant's eleventh, seventeenth and twentieth propositions of law concern his contentions that he was denied effective assistance of counsel at the guilt and mitigation phases of his trial, and also at the appellate level. *Strickland* v. *Washington* (1984), 466 U.S. 668, sets forth the test to be applied in determining whether a defendant has been denied effective assistance of counsel. See, also, *State* v. *Smith* (1985), 17 Ohio St. 3d 98, 100, 17 OBR 219, 220-221, 477 N.E. 2d 1128, 1131. Applying this test, we find that appellant received the assistance of counsel to which he was entitled. The first prong of the *Strickland* test requires appellant to show that his counsel's performance was deficient. Here, defense counsel made no errors serious enough to deprive appellant of the "counsel" guaranteed by the Sixth Amendment. While defense counsel's trial and appellate court strategies may at times have been debatable, they fell within the wide range of reasonable professional assistance. Therefore, we need not proceed to the second prong of the *Strickland* test, which requires that appellant show that counsel's deficient performance prejudiced his defense. These propositions of law are not well-taken.

## L

In his twelfth proposition of law, appellant contests the definition of reasonable doubt given to the jury by the trial court.[13] Appellant states that by using the term, "firmly convinced," the trial court reduced the burden of proof to something less than beyond a reasonable doubt.

Any charge which amplifies the statutory definition of reasonable doubt must be found to be erroneous and prejudicial before the judgment of the trial court will be disturbed. *State v. Sargent* (1975), 41 Ohio St. 2d 85, 70 O.O. 2d 169, 322 N.E. 2d 634, paragraph two of the syllabus. Accord *State v. Scott* (1986), 26 Ohio St. 3d 92, 100, 26 OBR 79, 86, 497 N.E. 2d 55, 62.

We find that the trial court's use of the term "firmly convinced" in its instructions on reasonable doubt was merely an attempt to restate the statutory definition.[14] Considering these instructions in their entirety, we are convinced that reasonable doubt was properly defined, and that the slight amplification of the statutory definition by the trial court was not prejudicial to appellant. Therefore, we find no merit in this proposition of law.

## M

Appellant asserts in his thirteenth proposition of law that the jury was impermissibly induced to diminish its responsibility for sentencing him to death in violation of the rules announced by the United States Supreme Court in *Caldwell* v. *Mississippi* (1985), 472 U.S. 320.[15]

---

[13] The trial court instructed the jury as follows:

"Reasonable doubt is present when, after you have carefully considered and compared all of the evidence, you cannot say you are *firmly convinced* of the truth of the charge.

"Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.

"Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

"In this case as in all other cases of its type, you must look to the quality of the evidence which must be given your primary consideration. The quality of the evidence may or may not be commensurate with the quantity of the evidence.

"There were a number of witnesses and exhibits presented in this case. All of the evidence should be examined carefully and conscientiously by you, and if, after a full and impartial consideration of all of the evidence you are *firmly convinced* beyond a reasonable doubt of the truth of the charge, then the State has proved its case and you must find the defendant guilty according to your findings.

"On the other hand, if you are not *firmly convinced* of the truth of the charge, then the State has not proved its case and in that event, you must find the defendant not guilty according to your findings." (Emphasis added.)

[14] We emphatically remind trial courts that they should limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges.

[15] During the mitigation phase, the prosecutor made the following comments in closing argument:

"Each one of you can sit back and reason with yourselves why should I recommend giving the electric chair, why shouldn't I make that recommendation.

"* * *

"Then the law says you must return a recommendation of the sentence of death, that's it, and it's a recommendation and don't make any mistake about that, it's just a recommendation.

"You make the recommendation to Judge Coleman and in Judge Coleman's opinion under the law, the ultimate decision

In paragraph one of the syllabus in *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52, reversed and remanded on other grounds (1987), 32 Ohio St. 3d 70, 512 N.E. 2d 581, this court determined the applicability of *Caldwell* as follows:

"*Caldwell* * * * is inapplicable where the statements made to the jury during the mitigation phase of a capital trial were accurate statements of the law and were not made to induce reliance on the appellate process."

Our holding in *Rogers* is dispositive of the *Caldwell* issue regarding the jury instruction of the trial court here, since this instruction was very similar to the one ruled upon in *Rogers*. *Id.* at 430-431, 28 OBR at 483, 504 N.E. 2d at 55-56, fn. 2.

Regarding the comments of the prosecutor during closing argument in the mitigation phase, we find that taken as a whole they were an accurate statement of the law. The prosecutor made no reference to the appellate process, and consequently did not induce the jury to rely on it. See *id.* at 432, 28

OBR at 485, 504 N.E. 2d at 57. Because the jury was not caused to diminish its collective sense of responsibility for making the recommendation that the death penalty be imposed, we reject this proposition of law.

## N

Appellant in his fifteenth proposition of law avers that the trial court erred when it instructed the jury that a unanimous decision was required to recommend a life sentence. We considered and overruled this argument in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, wherein we held in paragraph ten of the syllabus that "[i]n returning a sentence of life imprisonment under R.C. 2929.03(D)(2), the jury's verdict must be unanimous." Appellant's argument has no validity.

## O

In his sixteenth proposition of law, appellant maintains that the trial court erred when it instructed the jury to exclude considerations of mercy, compas-

---

is placed on Judge Coleman to impose the sentence.

"* * *

"You're probably thinking, well, he sounds like that's a very easy thing to do but we are the ones that have to go back there, we are the ones that have to make this recommendation, it's easy for him to say that; we are the ones that have to make the recommendation, it's easy for him to say that."

Prior to that closing argument, the trial court advised the jury that:

"It becomes your duty now to recommend to the Court the sentence under the statute which you find to be an appropriate recommendation."

In its instructions, the trial court stated:

"I instruct you as a matter of law that if you make such finding [that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt],

then you have no choide [*sic*] and must recommend to the Court that the sentence of death be imposed upon defendant, Donald Williams.

"A jury recommendation to the Court that the death penalty be imposed is just that — a recommendation, and is not binding upon the Court.

"The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this Court. In the final analysis, after following the procedures and applying the criteria set forth in the statute, the Judge will make the decision as to whether the defendant, Donald Williams, will be sentenced to death or to life imprisonment.

"* * *

"The particular recommendation which you make [on a life sentence] is binding upon the Court and the judge must impose the specific life sentence which you have recommended."

sion, or sympathy for appellant in determining whether to recommend the death penalty. This court disposed of that argument in *State* v. *Jenkins, supra,* at paragraph three of the syllabus. Hence, this proposition of law is overruled.

### P

Appellant in his eighteenth proposition of law raises various attacks on the constitutionality of the death penalty statute. Each of his specific constitutional objections has been previously rejected in *State* v. *Jenkins, supra; State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768; and their progeny. Consequently, we reject this proposition of law.

### Q

In his nineteenth, and now the final, proposition of law, appellant urges this court to reverse his conviction and sentence on the basis of the cumulative effect of the various errors that occurred during both the guilt and mitigation phases of his trial. After a review of that evidence which was properly admitted at trial, it is the opinion of this court that the cumulative effect of the improperly admitted evidence was not sufficient to deprive appellant of a fair trial. It is clear beyond a reasonable doubt that the large body of properly admitted evidence, standing alone, constituted overwhelming evidence of appellant's guilt. See *Delaware* v. *Van Arsdall, supra; State* v. *Williams, supra.* We are likewise convinced that the improperly admitted evidence, taken as a whole, did not contribute to appellant's conviction or sentence.

Due to the severity of the penalty which may be imposed, to the controversy surrounding the death penalty, and to the procedural intricacies that are involved, capital cases are generally fought fiercely and at length by the parties involved. Under such circumstances, it is inevitable that some harmless errors will take place. Consequently, the fact that a number of harmless errors occur over the length of a capital prosecution does not, as in this case, necessarily mean that the accused was deprived of a fair trial.

Accordingly, this proposition of law is overruled.

### II

Having considered and rejected appellant's challenges to the validity of his conviction and sentence, we now turn to the question of whether, upon independent review, this court should affirm the imposition of the death penalty on appellant.

The aggravating circumstance in this case is that appellant hired another person to kill the victim, Archie Moore. Against this we must weigh the mitigating evidence introduced by appellant, if any, which at best consisted only of the fact that he has a wife and child. In light of the evidence that appellant callously and brazenly hired a man to violently murder the victim, we have no doubt that the aggravating circumstance outweighs beyond a reasonable doubt any mitigating factors advanced by appellant.

### III

Having determined that the sentence of death is appropriate for appellant, we proceed to the final consideration of whether the death sentence is proportional to that imposed by this court in similar cases.

This is the first case before the court in which a murder for hire is involved. However, the case bears some similarity to *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407, and to *State* v. *Post* (1987), 32 Ohio St. 380, 513 N.E. 2d 754, wherein this court affirmed the imposition of

the death sentences.[16] Therefore, we find that the death sentence is neither excessive nor disproportional in this case.

The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., and HOLMES, J., concur.

DOUGLAS, J., concurs in judgment.

SWEENEY, WRIGHT and H. BROWN, JJ., dissent.

DOUGLAS, J., concurring. I concur in the judgment. I write separately for two specific reasons.

First, I disagree with some of the interpretations contained in the opinion of several of the Rules of Evidence. Of particular concern is the language contained in fn. 10 and the analysis of Evid. R. 404(A)(1) and 405(A).

Second, with the recitation in the opinion of the number of errors deemed harmless, it is inevitable that the question will be raised as to when cumulative "harmless error" becomes reversible error. We were confronted with much the same problem in our recent case of *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 528 N.E. 2d 542.

For those who might raise this question, as has been raised in some of our previous death penalty cases for errors occurring in both the guilt and penalty phases of a trial, a *complete* reading of the texts of *Delaware* v. *Van Arsdall* (1986), 475 U.S. 673, and

*United States* v. *Hasting* (1983), 461 U.S. 499, would be instructive. *Hasting* discusses in detail the import of the court's decision in *Chapman* v. *California* (1967), 386 U.S. 18. Of particular interest are the court's comments in *Hasting* at 509:

"Since *Chapman,* the Court has consistently made clear that it is the *duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations* * * *. The goal, as Chief Justice Traynor has noted, is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.' * * *" (Emphasis added.)

In the thirty-nine death penalty cases heard by this court since the advent of the new law in 1981, with possibly one or two exceptions, proof of the defendant's guilt has been overwhelming. Using the analysis set forth by today's opinion and properly considering *Chapman, Hasting* and *Van Arsdall,*[17] it should be no mystery why the United States Supreme Court has not accepted for complete review any one of the Ohio death penalty cases appealed to that court.

Accordingly, I concur.

SWEENEY, J., dissenting. While I acknowledge that the majority opinion has accurately related the errors urged by appellant, I must disagree with its further conclusion that such errors are harmless beyond a reasonable doubt.

The majority opinion correctly observes that the prior statement of Dwight Brown was inadmissible hear-

---

[16] Both cases involve execution-style killings.

[17] I recognize that *Hasting* and evidently *Van Arsdall* were not death penalty cases. It would seem, however, that the penalty involved should make no difference in the analytical assessment of the doctrine involved.

say. This conclusion is inescapable since both the content of the statement and the purpose for which it was offered fall outside the realm of competent evidence. Nevertheless, the majority opinion had deemed error in its admission to be harmless.

Similarly, the lead opinion is correct in noting that the cross-examination of appellant by the prosecution concerning prior crimes was both irrelevant and impermissible pursuant to Evid. R. 404(B). I would further conclude that it was unduly prejudicial.

I am also in total agreement with the majority opinion that the trial court erred in allowing the admission into evidence of the statement of Merle Berry. These remarks clearly were not admissible as a prior inconsistent statement pursuant to Evid. R. 801(D)(1)(a). Merle Berry was not subject to cross-examination by appellant, did not risk sanctions for perjury, and was not under oath at the time the statement was made. The remarks were not admissible as a prior consistent statement for purposes of Evid. R. 801(D)(1)(b), because Berry's statement regarding when she learned of the murder is clearly not consistent with her testimony at trial. The statement was nevertheless admitted over the objection of defense counsel.

I must also commend the majority opinion for its thorough analysis of the evidentiary problems created by the prosecution's successful attempt to place before the jury irrelevant instances of appellant's prior conduct. As observed by the majority opinion, Evid. R. 608(B) is unambiguous in excluding extrinsic evidence of specific instances of conduct to attack the credibility of a witness. Nevertheless, the trial court allowed a witness to testify regarding activity of the defendant wholly unrelated to the crimes for which he was tried. Thus, my disagreement with the majority is not with its analysis but with its further conclusion that the error was harmless beyond a reasonable doubt. It is difficult to imagine that the jury's knowledge of appellant's alleged employment of a juvenile in drug transactions was not prejudicial in nature.

Assuming *arguendo* that each of the many instances of trial error would have been harmless standing alone, the conclusion is inescapable that together they substantially and improperly influenced the jury against appellant. It is therefore imperative that each instance of error not be considered in a vacuum. The cumulative effect of such errors clearly undermines what the majority opinion understandably professes to be the goal of our system of jurisprudence — a fair trial. I would therefore vacate the imposition of the sentence of death in the case *sub judice* and remand the cause for resentencing pursuant to R.C. 2929.06.

WRIGHT and H. BROWN, JJ., concur in the foregoing dissenting opinion.