JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Carl West ("defendant') appeals from the judgment entered pursuant to a jury verdict finding him guilty of kidnapping, aggravated burglary, aggravated robbery, each with a one-year firearm specification, and carrying a concealed weapon. Defendant was indicted along with co-defendants Rontae Perkins ("Perkins"), Quentin Pinchback ("Pinchback"), Curtis Gregory ("Gregory"), and Michael Saler ("Saler"). For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} The facts relevant to this appeal have been set out in the companion case of State v. Pinchback (____), Cuyahoga App. No. 83757, and need not be repeated in its entirety herein. However, we note the following facts relevant to defendant's appeal: On June 16, 2003, defendant was indicted in a 12-count indictment for his conduct arising out of the events on June 9, 2003, to wit: two counts of conspiracy to commit aggravated murder, two counts of kidnapping, two counts of aggravated burglary, two counts of aggravated robbery, two counts of felonious assault, one count of failure to comply with the order or signal of a police officer, and one count of carrying a concealed weapon. On September 16, 2003, the jury returned guilty verdicts on two counts of aggravated burglary, two counts of aggravated robbery, one count of kidnapping (all with firearm specifications), and one count of carrying a concealed weapon. Defendant was acquitted of the remaining charges. He received a total sentence of seven years for these convictions.
 {¶ 3} This timely appeal followed. We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 {¶ 4} "I. The court committed reversible error when it refused to sever the trials of the codefendants in violation of the Bruton line of cases."
 {¶ 5} In his first assignment of error, defendant contends that he was denied a fair trial when the trial court denied the motion for separate trials. Specifically, defendant claims that he was denied his right of confrontation when the State introduced police statements made by Pinchback and Gregory, who did not testify at trial. In support of his position, defendant cites to Bruton v. United States, 391 U.S. 123, 137 (1968) andUnited States v. Fleming (C.A. 7, 1979), 594 F.2d 5989, for the proposition that a defendant is entitled to a separate trial where the statement of a co-defendant is offered at trial, which implicates the defendant. Defendant's reliance on these cases is misplaced inasmuch as the statements read into evidence do not implicate defendant in the events of June 9, 2003. First, the statement made by Gregory, and read into evidence by Officer Dirk Halschiedt, does not even mention defendant's name. (Tr. 2028-2029). Next, the statement made by Pinchback, and read into evidence by F.B.I. Special Agent Joseph Oliver, was redacted by the trial court so that it did not include any reference to the defendant or the other co-defendants. (Tr. 1874-1876). Since neither Gregory nor Pinchback were "witnesses against" the defendant and in no way implicated him in the events of June 9, 2003, defendant's right to confrontation under theSixth Amendment was not violated by the admission of their statements. Accordingly, the trial court did not err when it denied the motion for separate trials.
 {¶ 6} Assignment of Error I is overruled.
 {¶ 7} "II. Appellant was denied a fair trial by the FBI agent's improper comments while testifying.
 {¶ 8} "III. The trial court erred when it continuously allowed the State to introduce hearsay testimony in violation of Evidence Rule 802, thus denying appellant his right to a fair trial.
 {¶ 9} "VI. The trial court [erred] when it refused defense counsel the right to cross-examine a key identification witness on material inconsistencies in her written statement.
 {¶ 10} "VII. The trial court erred by refusing to order the county prosecutor and/or the DEA to turn over a statement of a key witness of the State, thus denying appellant of his right to confrontation under the Ohio Constitution and the U.S. Constitution, thus denying appellant his right to a fair trial."
 {¶ 11} In these four assignments of error, defendant challenges certain evidentiary rulings made by the trial court. The admission or exclusion of relevant evidence lies within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. State v. Combs (1991),62 Ohio St.3d 278, 284. An abuse of discretion is defined as a decision that is unreasonable, arbitrary or unconscionable, rather than a mere error in judgment. Blakemore v. Blakemore (1983),5 Ohio St.2d 217. With these principles in mind, we proceed to address defendant's assignments of error.
1. Comments made by F.B.I. Agent Joseph Oliver
 {¶ 12} Defendant claims that he was unfairly prejudiced when F.B.I. Agent Oliver made improper remarks during the trial. Since defendant's counsel failed to object at the time of trial, we will review under a plain error standard. State v. Long (1978),53 Ohio St.2d 91. Plain error exists when but for the error the outcome of the trial would have been different. State v.Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 13} First, defendant complains that he was prejudiced when Agent Oliver made the following comment:
 {¶ 14} "Agent Oliver: The fact that the weapons that were recovered from the scene, they were — traveled interstate along with ammunition, along with being possessed by prior felons." (Tr. 1888). (Emphasis supplied).
 {¶ 15} We find no plain error in this statement. Agent Oliver was merely responding to a question during direct examination as to why a federal agent had been assigned to this case. Following objections by two of the other defense attorneys and a motion for a mistrial, no further comment was made about Agent Oliver's statement. Moreover, it cannot be said that but for his statement the outcome of the trial would have been any different. See Ibid.
 {¶ 16} Next, defendant complains he was prejudiced when Agent Oliver commented on the truthfulness of Pinchback's statements made after his arrest.
 {¶ 17} The record demonstrates that counsel for co-defendant Perkins objected to Agent Oliver's statement and that the trial court sustained the objection and immediately gave a curative instruction. (Tr. 1903). Where the trial court has sustained an objection and provided a curative instruction to the jury, we must presume the jury followed the trial court's instruction.State v. Garner (1995), 74 Ohio St.3d 49, 59. Moreover, Pinchback's own attorney waived any error in this regard when he cross-examined Agent Oliver on his opinion of Pinchback's honesty. (Tr. 1976).
 {¶ 18} Assignment of Error II is overruled.
 Hearsay evidence {¶ 19} Next, defendant claims that he was unfairly prejudiced when the trial court allowed hearsay evidence during the trial. Hearsay evidence is prohibited under Evid.R. Rule 801(C) and is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents. State v.Williams (1988), 38 Ohio St.3d 346, 348.
 {¶ 20} Defendant first argues that the trial court erred in allowing Saler and Det. Halscheidt to testify to both sides of telephone conversations. In both of these instances, the statements testified to were not issues in controversy and were not offered to prove the truth of the matter asserted. Rather, Saler merely testified that he agreed to help Jarrett Doss ("Doss") find Richard Horvath III ("Li'l Ritchie") after their phone conversation and Det. Halscheidt testified to his follow-up in the investigation of the burglary at Crystal Szell's ("Szell") house. Accordingly, their testimony was not within the definition of hearsay.
 {¶ 21} Next, defendant argues that the trial court erred in allowing Szell to testify about Tiffany Duraj's ("Duraj") description of the guns. Even if we were to find this impermissible hearsay, any error was immediately corrected when Szell subsequently testified that she did not see Pinchback put a gun to Duraj's face.
 {¶ 22} Assignment of Error III is overruled.
 Cross-examination of State witness {¶ 23} Next, defendant claims that the trial court erred when it refused to allow defense counsel to cross-examine Duraj regarding inconsistencies between her written police statement and her testimony at trial. We disagree.
 {¶ 24} Crim.R. 16(B)(1)(g) requires the court, upon motion of defense counsel, to examine a witness' written statement to determine if any inconsistencies exist with the witness' direct examination testimony. If the trial court determines that inconsistencies do not exist, then the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 {¶ 25} Here, following Duraj's direct examination, defense counsel argued that her testimony was inconsistent with the written statement she had given to the police shortly after the incident. The trial court allowed all four attorneys to examine Duraj's written police statement. However, following arguments by each attorney, the trial court determined that no material inconsistencies existed between Duraj's written statement and her trial testimony.[1] Accordingly, the trial court did not err in refusing to allow defendant's attorney to use Duraj's statement in his cross-examination of her. See Ibid.
 {¶ 26} Assignment of Error VI is overruled.
 Lil Ritchie's statements {¶ 27} Finally, defendant claims that the trial court erred in refusing to order the Virginia DEA to produce statements made by Lil Ritchie in December 2002. We disagree. Other than some speculation that Lil Ritchie's statements might be favorable to the defense, none of the defense attorneys, either at trial or now, can provide any evidentiary rule or legal basis for the disclosure of his statements made in an unrelated ongoing Federal Grand Jury investigation. Pursuant to App.R. 12(A)(2) and 16(A)(7), we decline to further address this assignment of error.
 {¶ 28} Assignment of Error VII is overruled.
 {¶ 29} "IV. The trial court erred in denying appellant's motion for acquittal as to the charge when the State failed to present sufficient evidence that appellant committed these crimes.
 {¶ 30} In this assignment of error, defendant argues that the evidence was insufficient to support his convictions. We disagree.
 {¶ 31} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 32} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 33} Here, defendant was convicted of aggravated robbery, aggravated burglary, kidnapping, and carrying a concealed weapon. R.C. 2911.01 defines the crime of aggravated robbery as follows:
 {¶ 34} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 35} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
 {¶ 36} "* * *
 {¶ 37} "(3) Inflict, or attempt to inflict, serious physical harm on another;"
 {¶ 38} R.C. 2911.11 defines the crime of aggravated burglary as follows:
 {¶ 39} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 40} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 41} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 42} R.C. 2905.01 defines the crime of kidnapping and provides in pertinent part as follows:
 {¶ 43} "(A) No person, by force, threat, or deception, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 44} "* * *
 {¶ 45} "(2) To facilitate the commission of any felony or flight thereafter;"
 {¶ 46} Finally, R.C. 2923.12(A) defines the crime of carrying a concealed weapon and provides that "no person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or ordnance."
 {¶ 47} When viewed in the light most favorable to the State, the record contains sufficient evidence that defendant was guilty of aggravated robbery, aggravated burglary, kidnapping, and carrying a concealed weapon and the trial court properly denied his motion for acquittal.
 {¶ 48} At trial, Saler gave the following testimony: He drove defendant and three other men to Szell's house on the evening of June 9, 2003, and that they were all carrying guns. Shortly after dropping them off, he received a call from Perkins and went back to pick them up. All of the defendants came running from different directions and a police chase ensued. Duraj testified that she saw Pinchback in her house with a gun and that after running to a neighbor's house, saw him get into a van that pulled up in front of the house. Szell testified that the defendant pointed his gun at her and placed it in her stomach after she saw him leaving her house. Duraj corroborated Szell's testimony, since she was watching from her neighbor's window. Szell also testified that her house had been ransacked and that $1,600 in cash was missing from an envelope. Officer Halscheidt testified that he caught Saler after the men bailed from the van and recovered numerous cell phones, guns, and large sums of cash. North Royalton Police Officer Christopher Johnson testified that he chased the defendant after he bailed from the van and found a white towel and large amount of money on him when he was captured.
 {¶ 49} When this evidence is viewed in the light most favorable to the State, the court could find that defendant, while carrying a gun, entered into Szell's home without her permission to commit a crime inside. The court could also find that defendant, while committing a theft inside Szell's home, attempted to inflict serious physical harm to her and restrained her liberty while trying to escape. Accordingly, this Court concludes that any rational trier of fact could have found the essential elements of aggravated robbery, aggravated burglary, kidnapping, and carrying a concealed weapon proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail.
 {¶ 50} Assignment of Error IV is overruled.
 {¶ 51} "V. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 52} In this assignment of error, defendant argues that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 53} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387.
 {¶ 54} Here, the jury heard numerous witnesses identify defendant as one of the men present during the robbery at Szell's house. Szell testified that defendant placed a gun in her stomach and threatened her. Saler testified that he dropped defendant off at Szell's house and picked him up there shortly thereafter. Officer Johnson testified that he captured defendant after all the men bailed from the van. Under these circumstances, we conclude that the same facts that overcome a sufficiency of the evidence claim also overcome his manifest weight argument.
 {¶ 55} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in finding defendant guilty of aggravated robbery, aggravated burglary, kidnapping, and carrying a concealed weapon. Substantial, competent and credible evidence supports the court's verdict.
 {¶ 56} Assignment of V is overruled.
 {¶ 57} "VIII. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to file a motion to suppress."
 {¶ 58} In this assignment of error, defendant claims he was denied the effective assistance of trial counsel because his counsel failed to file a motion to suppress the identifications made by two witnesses. Specifically, defendant claims that the identifications made by Szell and Duraj were impermissibly suggestive and unreliable because Szell's identification occurred several months after the incident, Duraj's identification occurred several hours after the crime, and she admitted that she only saw the male for "two seconds." We disagree.
 {¶ 59} To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 60} A court is not required to suppress an identification of a suspect unless the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. In re Henderson,
Cuyahoga App. No. 79716, 2002-Ohio-483. Indeed, even if the pretrial identification procedure was impermissibly suggestive, an in-court identification is permissible if the State establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime.State v. Tate, Cuyahoga App. 81577, 2003-Ohio-1835, citing Inre Henderson, Cuyahoga App. No. 79716, 2002-Ohio-483. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. Id. In determining whether an identification is reliable, a court must consider (1) the witness's opportunity to view the suspect at the time of the incident, (2) the witness' degree of attention, (3) the accuracy of the witness's prior description, (4) the witness' certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. State v. Waddy
(1992), 63 Ohio St.3d 424, 439.
 {¶ 61} Applying these factors to the case at hand, we note the following: First, Szell testified that she saw co-defendant Pinchback standing inside her laundry room with a gun. She testified that she made eye contact with him and got a good look at him before she turned and ran out of the house. She testified that she saw Pinchback again as he was running down her driveway. She also testified that she saw a van pull up in front of her house and saw co-defendant Perkins open the door of the van so that Pinchback and another man could get in. Similarly, Szell testified that she saw two men run out of her house and that she got a good look at both of them, particularly the defendant, because he pointed a gun at her and stuck it in her stomach.
 {¶ 62} Next, the descriptions given by Duraj and Szell to the police officers were similar to the defendants' appearances. Finally, both Duraj and Szell were able to identify Pinchback and defendant from photo arrays. Although Szell's identification was made several months after the crime had been committed, Szell was certain in her identification, had ample opportunity to observe both of the defendants at the crime scene, and had given a good description of the defendants to the police shortly after the crime had been committed. Clearly, she had a reliable, independent basis for the identification based on her prior independent observations made at the scene of the crime. Ibid.
 {¶ 63} Since the identifications made by Duraj and Szell were properly admitted, defendant's trial counsel was not ineffective in failing to file a motion to suppress them. Accordingly, defendant was not denied effective assistance of counsel on this basis.
 {¶ 64} Assignment of Error VIII is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Rocco, J., concur.
[1] Indeed, the trial court allowed the attorney for Perkins to question Duraj on an omission in her written statement, to wit: Duraj did not mention that she saw Perkins get out of the van outside her house since this was not an "inconsistency."