{¶ 1} This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Anthony M. Scarl, appeals from a final judgment of the Portage County Municipal Court, Ravenna Division, convicting him of domestic violence. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The record shows that during the early morning hours of September 10, 2001, appellant was arrested and charged with one count of domestic violence, in violation of R.C. 2919.25(A). The matter proceeded to a bench trial beginning on January 28, 2002. After considering the evidence, the trial court found appellant guilty and sentenced him to serve 180 days in jail. The trial court, however, suspended all 180 days and placed appellant on probation for one year.
 {¶ 3} From this decision, appellant filed a timely notice of appeal with this court. He now submits the following assignments of error for our consideration:
 {¶ 4} "[1.] The trial court erred to the prejudice of defendant-appellant by not following the procedure required by R.C. 2945.44
when the victim stated that she wanted to claim her privilege against self-incrimination under the Fifth Amendment to the United State [sic] Constitution.
 {¶ 5} "[2.] The trial court erred to the prejudice of defendant-appellant by admitting the written statement of the victim into evidence under the excited utterance exception to the rule against hearsay.
 {¶ 6} "[3.] The trial court erred to the prejudice of defendant-appellant in overruling his motions for acquittal made at the close of the state's case and at the close of all the evidence.
 {¶ 7} "[4.] The trial court erred to the prejudice of defendant-appellant by convicting him of domestic violence because the conviction was against the manifest weight of the evidence.
 {¶ 8} "[5.] The trial court erred to the prejudice of defendant-appellant because the combination of the First through Third Assignments of Error above amounted to a violation of defendant-appellant's due process rights to a fair trial guaranteed by both the United States and the Ohio Constitutions."
 {¶ 9} Under his first assignment of error, appellant argues that the trial court abused its discretion when it failed to follow the procedure set forth in R.C. 2945.44 and offer the victim in this case, appellant's wife, transactional immunity. He believes that the court's comments during trial "logically served to reinforce the belief by the victim * * * that it was permissible for her to claim the inability to remember anything, but that it was not permissible for her to plead the Fifth." According to appellant, the victim's "claim of lack of memory was her way of avoiding giving sworn testimony in court and exposing herself to a charge of perjury." Appellant maintains that his wife "clearly was going to testify in court differently from her sworn complaint * * * that initiated this case[,]" and that if the trial court properly had followed R.C. 2945.44, "the victim would not have had to resort to her tactic of claiming lack of memory to avoid committing perjury."
 {¶ 10} Our review of the record indicates that appellant did not object to the trial court's failure to grant the victim transactional immunity. Accordingly, he has waived all but plain error for purposes of appeal.
 {¶ 11} In State v. Barnes (2002), 94 Ohio St.3d 21, 27, the Supreme Court of Ohio held the following with respect to the application of plain error:
 {¶ 12} "Under Crim.R. 52(B), `[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. State v. Hill (2001),92 Ohio St.3d 191, 200, 749 N.E.2d 274, 283 (observing that the `first condition to be met in noticing plain error is that there must be error'), citing United States v. Olano (1993), 507 U.S. 725, 732,113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 518 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. State v.Sanders (2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90, 111, citing Statev. Keith (1997), 79 Ohio St.3d 514, 518, 684 N.E.2d 47, 54; see, also,Olano, 507 U.S. at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519 (a plain error under Fed.R.Crim.P. 52[b] is `"clear" or, equivalently, "obvious"' under current law). Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. See, e.g., Hill, 92 Ohio St.3d at 205, 749 N.E.2d at 286; State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; State v. Long (1978),53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.
 {¶ 13} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'State v. Long, 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; see, also, Olano, 507 U.S. at 736,113 S.Ct. at 1779, 123 L.Ed.2d at 521 (suggesting that appellate courts correct a plain error `if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,"' quoting United States v.Atkinson [1936], 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557)."
 {¶ 14} R.C. 2945.44 provides:
 {¶ 15} "(A) In any criminal proceeding in this state or in any criminal or civil proceeding brought pursuant to sections 2923.31 to2923.36 of the Revised Code, if a witness refuses to answer or produce information on the basis of his privilege against self-incrimination, the court of common pleas of the county in which the proceeding is being held, unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if both of the following apply:
 {¶ 16} "(1) The prosecuting attorney of the county in which theproceedings are being held makes a written request to the court of commonpleas to order the witness to answer or produce the information,notwithstanding his claim of privilege;
 {¶ 17} "(2) The court of common pleas informs the witness that by answering, or producing the information he will receive immunity under division (B) of this section.
 {¶ 18} "(B) If, but for this section, the witness would have been privileged to withhold an answer or any information given in any criminal proceeding, and he complies with an order under division (A) of this section compelling him to give an answer or produce any information, he shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, he gave an answer or produced any information.
 {¶ 19} "(C) A witness granted immunity under this section may be subjected to a criminal penalty for any violation of section 2921.11,2921.12, or 2921.13 of the Revised Code, or for contempt committed in answering, failing to answer, or failing to produce information in compliance with the order." (Emphasis added.) See, also, State ex rel.Koren v. Grogan (1994), 68 Ohio St.3d 590, 592 (holding that under R.C.2945.44, a court may not grant transactional immunity unless "(1) the witness refuses to answer on the basis of his privilege against self-incrimination, (2) the prosecuting attorney makes a written request to order the witness to answer, and (3) the court informs the witness he will receive transactional immunity.").
 {¶ 20} Here, when the prosecutor asked the victim what happened on the night in question, the victim attempted to assert her privilege against self-incrimination. Instead of making a written request to order the witness to answer, the prosecutor explained to the victim the difference between asserting her privilege against self-incrimination and claiming that she did not remember. When the victim continued to assert her privilege, the prosecutor asked the trial court to explain the difference between the two concepts. After hearing the trial court's explanation, the victim acknowledged that she now understood the difference and proceeded to testify that she did not remember anything.
 {¶ 21} As can be seen, at no time did the prosecutor in this case make a written request to have the witness answer the question. Accordingly, the trial court did not have the authority to grant the witness transactional immunity. State ex rel. Leis v. Outcalt (1982),1 Ohio St.3d 147, 149. Moreover, although former R.C. 2945.44 provided that either the prosecutor or the defendant could ask the court to grant a witness immunity, "[t]he present statute * * * clearly reflects the intent of the General Assembly that immunity be used only as a prosecutorial tool to fulfill the government's need for testimony."Outcalt at 149. In other words, unless the prosecutor first requests that a court grant a witness transactional immunity, the court does not have the authority to do so, even if the defendant makes a similar request. Therefore, because the statutory requirements for immunity were not met, we conclude that there is no error or deviation from a legal ruling resulting in plain error.
 {¶ 22} Moreover, the record clearly shows that the victim did not understand the significance of asserting her privilege against self-incrimination:
 {¶ 23} "Q. [by the prosecutor] * * * Now, Carol, I'd like to direct your attention to the evening of September 9th of 2001. Do you remember that day?
 {¶ 24} "A. No. I was intoxicated that day because I do not remember anything that happened that night. I would like to plead the Fifth.
 {¶ 25} "Q. Well, there's a difference between saying that you're pleading the Fifth and saying you don't remember. They're, two different things. If you don't remember, that's fine. So whatever, I ask you that you don't remember, just go ahead and say, okay?
 {¶ 26} "Okay.
 {¶ 27} "Do you remember — well, strike that.
 {¶ 28} "What is the last thing that you remember from September 9th?
 {¶ 29} "A. I would like to plead the Fifth.
 {¶ 30} "Q. Carol, you're not being charged —
 {¶ 31} "MS. STUCK [the prosecutor]: Your Honor, would it be appropriate for the Court to explain to Mrs. Scarl what that means?
 {¶ 32} "THE COURT: Mrs. Scarl, you've just indicated you don't remember anything because you were intoxicated.
 {¶ 33} "The Fifth Amendment has to do with saying that that would put you in a position where you would be prejudicing yourself with reference to a criminal charge that was filed against you.
 {¶ 34} "It's hard for me to understand if you don't remember anything, how you would be prejudicing yourself in that regard.
 {¶ 35} "I think the Prosecutor is just trying to get you to make it clear as to what you do or do not remember.
 {¶ 36} "And so I'll instruct you to attempt to answer the questions if you can do so. And so far, those questions, I don't think, put you in a position where you need to use the Fifth Amendment.
 {¶ 37} "Do you understand?
 {¶ 38} "MRS. SCARL: Yes.
 {¶ 39} "THE COURT: All right.
 {¶ 40} "BY MS. STUCK:
 {¶ 41} "Q. Right. Whatever I ask that you don't remember, that's fine, okay?
 {¶ 42} "A. (Witness nodding in the affirmative.)
 {¶ 43} "Q. So what is the last thing that you do recall from September 9th?
 {¶ 44} "A. Nothing.
 {¶ 45} "* * *
 {¶ 46} "Q. Do you recall anything from September 8th?
 {¶ 47} "A. I was at Put-in-Bay the weekend before that.
 {¶ 48} "Q. Okay.
 {¶ 49} "And do you recall an event on September 9th during which you contacted the Garrettsville Police?
 {¶ 50} "A. No.
 {¶ 51} "Q. Do you remember being at the Garrettsville Police Department?
 {¶ 52} "A. No.
 {¶ 53} "Q. Do you remember writing a statement for the Garrettsville Police?
 {¶ 54} "A. No."
 {¶ 55} Nevertheless, even if the victim understood what she was doing, appellant has provided nothing that would lead us to conclude that he was prejudiced by her actions. Appellant claims that the victim, if forced to testify, would have recanted her statement given to police on the night of September 9, 2001. However, there is nothing in the victim's testimony to suggest that this would have occurred, and appellant never proffered at trial what her testimony would have been. We also note that appellant did not object to the explanation given to the victim by either the trial court or the prosecutor. Appellant's first assignment of error has no merit.
 {¶ 56} In his second assignment of error, appellant claims that the trial court abused its discretion by allowing the state to introduce into evidence the statement given to the Garrettsville Police Department by the victim on the night of the incident. He argues that the statement constituted inadmissible hearsay and did not fall under any recognized exception.
 {¶ 57} The statement appellant argues should have been excluded came into evidence through the testimony of Officer Lance J. Gorby ("Officer Gorby"). He testified that on September 9, 2001, the victim entered the Garrettsville police station at around 10:35 p.m. During Officer Gorby's initial conversation with the victim, the victim told him "that her husband [appellant] had assaulted her and that she ran from the house and he was chasing her in the car." Upon hearing this, Officer Gorby immediately asked the victim to provide a written statement. When the state subsequently moved to admit the victim's written statement into evidence, appellant objected. The trial court, however, determined that the statement qualified as an excited utterance, and overruled appellant's objection.
 {¶ 58} Appellant submits that the written statement was not an excited utterance as it was the product of reflection and prepared at the request of a police officer. Evid.R. 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To qualify a statement as an excited utterance, a party must first establish these four requirements: "(1) an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event." State v.Shelton, 11th Dist. No. 2001-P-0050, 2002-Ohio-5157, at ¶ 24. See, also, State v. Taylor (1993), 66 Ohio St.3d 295, 300-301.
 {¶ 59} When deciding whether a statement qualifies as an excited utterance, a court should consider the following: "(a) the lapse of time between the event and the declaration; (b) the mental and physical condition of the declarant; (c) the nature of the statement; and (d) the influence of intervening circumstances." Shelton at ¶ 25. See, also, State v. Humphries (1992), 79 Ohio App.3d 589, 598. That being said, the timing of the statement is not the controlling factor. Statev. Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 WL 137595, at 5. See, also, Taylor at 303 (observing that "the passage of time between the statement and the event is relevant but not dispositive of the question"). Rather, "[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." (Emphasis sic.) Taylor at 303.
 {¶ 60} Moreover, declarations given in response to questioning can be admissible as excited utterances provided that certain safe guards are met. Stated differently, "[t]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988), 37 Ohio St.3d 87, paragraph two of the syllabus. See, also, State v. Patterson (May 22, 1998), 11th Dist. No. 96-T-5439, 1998 WL 310737, at 11.
 {¶ 61} The decision to admit a statement as an excited utterance under Evid.R. 803(2) rests within the sound discretion of the court making that decision and will not be overturned absent an abuse of that discretion. Patterson, at 10. An abuse of discretion connotes more than an error of law or judgment; instead, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 62} Officer Gorby testified that the victim, who was only wearing a T-shirt, shorts, and socks, was visibly upset when she entered the police station; she was "winded, over-excited, crying excessively," and "her speech was broken because of her crying." Officer Gorby noticed that the victim's "face was red and her entire face was kind of red and her neck was red, but she appeared to have swelling along the right side of her face and right eye." The record also indicates that shortly after arriving at the police station, Officer Gorby asked the victim to give a written statement during which "she would repeatedly break down crying and bawling and bawling again and was not able to write or speak."
 {¶ 63} Based on the evidence before us, we conclude that the trial court abused its discretion in admitting the victim's written statement as an excited utterance. Although the victim was upset by the events that had just transpired, she was able to gather her thoughts and provide a coherent written statement that included such information as the victim's activities leading up to the incident along with an alleged threat made by appellant on a different occasion. This suggests that the statement was the product of reflective thought rather than the shock of the assault.
 {¶ 64} That being said, we also conclude that that the introduction of the statement was harmless error in light of the victim's physical appearance, emotional state, and oral declarations to Officer Gorby. As we noted earlier, when the victim arrived at the police station she was hysterical. She told the officer that "her husband had assaulted her and that she had to run from the house and he was chasing her in the car." Moreover, Officer Gorby testified that during the time the victim gave this account she was "winded" and extremely upset. He also noticed that the victim did not have any shoes on, that "her big toe on her right foot was bleeding through the sock[,]" and that she had swelling on the right side of her face. When Officer Gorby asked the victim how many times appellant had hit her, she simply replied "too many[.]"
 {¶ 65} Under the circumstances, the victim's remarks, at that point, clearly constituted an excited utterance. Accordingly, even without the victim's written statement, there was overwhelming evidence of appellant's guilt. Appellant's second assignment of error is not well-taken.
 {¶ 66} Appellant argues in his third assignment of error that the trial court should have granted him an acquittal as the state did not present sufficient evidence to support a conviction. Similarly, in his fourth assignment of error, appellant maintains that his conviction was against the manifest weight of the evidence because an "inference can be drawn from the victim's attempt to recant that she had lied to the arresting officer when she made her statement to him and when she swore out the complaint that initiated this case."
 {¶ 67} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 68} On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 69} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 70} To convict appellant of domestic violence, the state was required to prove that he knowingly caused or attempted to cause physical harm to a family or household member. Officer Gorby testified that when the victim entered the police station she told him that appellant had just assaulted her. Furthermore, while talking to the victim, the officer noticed that the victim was "winded," that she was upset, that her face and neck were red, and that she had swelling on the right side of her face and eye. The swelling around the victim's eye worsened during the time she was at the police station, which led Officer Gorby to conclude that "it had to have been a fresh hit."
 {¶ 71} After considering the record, this court concludes that, when viewed in a light most favorable to the state, there was substantial evidence upon which the trier of fact could reasonably conclude that appellant knowingly caused or attempted to cause physical harm to his wife. In particular, the evidence shows that appellant repeatedly struck his wife in the head and that he chased the victim in his car when she attempted to escape the abuse. Moreover, there is no doubt that the victim suffered physical harm as Officer Gorby observed her injuries immediately after the attack.[1] Appellant's third assignment of error has no merit.
 {¶ 72} Next we will consider whether appellant's conviction was against the manifest weight of the evidence. According to appellant, he and the victim spent September 9, 2001, relaxing in their jacuzzi and drinking "three bottles of booze[.]" He testified that sometime during the evening the victim became very upset and suddenly left the house. Because he did not know why she left, appellant began following her in his car. Appellant explained that when he pulled up beside the victim and asked her what was wrong, she ran away. Concerned, appellant exited the car and began chasing the victim on foot. After unsuccessfully chasing the victim on foot, he resumed the pursuit in his car. Eventually, appellant determined that he "was too intoxicated to be driving." As a result, appellant returned to his home and went to bed. Appellant denied striking his wife and theorized that the injuries must have occurred when the victim was running around outside.
 {¶ 73} This court concludes that after reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, the trial court did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction. Despite the fact that much of the weight of the evidence presented rested on the credibility of the witnesses there is nothing to suggest that Officer Gorby's testimony was incredible, absurd, or unworthy of belief. Appellant's fourth assignment of error is without merit.
 {¶ 74} Finally, in his fifth assignment of error, appellant claims that he was denied a fair trial because the cumulative effect of the errors set forth above violated his constitutional right to due process. We disagree.
 {¶ 75} In United States v. Hasting (1983), 461 U.S. 499, 508-509, the United States Supreme Court observed that "given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." See, also, State v. Lott (1990),51 Ohio St.3d 160, 166. Nevertheless, even though a criminal defendant is not entitled to a perfect trial, he is entitled to a fair one. Delawarev. Van Arsdall (1986), 475 U.S. 673, 681. See, also, State v. Williams
(1988), 38 Ohio St.3d 346, 349. As a result, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995), 74 Ohio St.3d 49, 64.
 {¶ 76} As is well documented throughout this opinion, appellant has failed to demonstrate that any of the above alleged errors, individually or taken together, prejudiced his case, thus denying him a fair trial. Accordingly, appellant's fifth assignment of error is not well taken.
 {¶ 77} Pursuant to the foregoing analysis, appellant's five assignments of error have no merit. The judgment of the trial court, therefore, is affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL, J., concurs.
DIANE V. GRENDELL, J., concurs in judgment only.
[1] Although Officer Gorby photographed the victim's injuries, he was unable to develop the photographs because of technical difficulties with the camera.