OPINION
{¶ 1} Defendants-appellants, Jeffrey and Jesse Lamb, appeal their convictions in the Butler County Court of Common Pleas for robbery in violation of R.C. 2911.02(A)(3).
 {¶ 2} On October 17, 2001, Danielle Breeden was working at Cashland, a check-cashing business in Middletown. She received a telephone call around 5:45 p.m. The caller asked to speak to a manager or supervisor. When Breeden told the caller she could help him, he asked if she smelled any type of gas in the building. When she told the caller she did not smell anything, he instructed her to go to the back door of the building to see if she smelled anything there. Breeden went to the back door and smelled an odor like gasoline.
 {¶ 3} The caller then told Breeden that he was being held hostage behind her building by two men. He told her that if she didn't place money at the back door, the men would blow up the building. The caller made a specific reference to a Planned Parenthood office located two doors away from Cashland.
 {¶ 4} Breeden got the customers out of her store and ran to the tobacco shop next door. Breeden and Muhammed, the owner of the tobacco shop, drove to a pay phone behind the building to call 911. On their way to the pay phone, Breeden noticed a man in a black hooded sweatshirt, standing near a dumpster behind Cashland, peeking around the back door. Breeden saw a second man dressed in a black leather jacket and a black hat with a false blonde ponytail on it hanging up the pay phone. The man at the pay phone ran toward a car parked along the wall behind Cashland's back door and got into the front passenger seat. The man behind Cashland ran to the car and got into the driver's seat, and the two drove off.
 {¶ 5} Breeden and Muhammed called 911 and reported the phone call to Cashland and the men behind the building. They described the car as a teal-blue Camaro with a small American flag on the front antenna. While they were on the phone, the Camaro returned, driving slowly past Breeden and Muhammed, and the two were able to give a license plate number to the 911 dispatcher.
 {¶ 6} Middletown police officers observed a car matching the description and pulled the vehicle over. The driver was identified as appellant, Jesse Lamb, and the passenger was identified as his father, appellant Jeffrey Lamb. Police found a black leather jacket, a black hooded sweatshirt and a hat with an attached false blonde ponytail in the vehicle. Breeden was taken to the scene of the stop, and she identified appellants as the men she had seen behind the building.
 {¶ 7} Appellants were taken into custody and interviewed separately. Jesse told the detective that he and his father came to Middletown to sell some cards at a baseball card shop, and that they drove around several shopping areas looking for the shop, but were unable to find it. Jesse told the detective that the two did not stop the car or get out of it, and that neither one of them used a pay phone. The detective had a discussion with Jeffrey. After the detective advised Jeffrey he was under arrest, Jeffrey asked for an attorney.
 {¶ 8} Both Jeffrey and Jesse were indicted for robbery and the two were tried together before a jury. Jesse testified, discussing his statement to the police that they were looking for a baseball card shop. Jeffrey also testified and told a similar story. The jury found Jeffrey and Jesse guilty of robbery as charged in the indictment, and they were sentenced by the trial court. Jeffrey and Jesse separately appealed their convictions and the two cases were consolidated on appeal. Assignments of error raised by each appellant are addressed individually below.
Jeffrey's Appeal
 {¶ 9} On appeal, Jeffrey raises seven assignments of error.
Assignment of Error No. 1:
 {¶ 10} "DEFENDANT-APPELLANT WAS DENIED THE RIGHT TO DUE PROCESS AND A FAIR TRIAL PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AS A RESULT OF PROSECUTORIAL MISCONDUCT."
 {¶ 11} Jeffrey argues that the prosecutor committed misconduct in six areas at trial. He first argues that it was misconduct for the prosecutor to elicit testimony from him regarding his silence after being given Miranda warnings.
 {¶ 12} The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith
(1984), 14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.
 {¶ 13} At trial, Jeffrey's counsel failed to object to the prosecutor's comments that he now assigns as error. A failure to object to alleged prosecutorial misconduct waives all but plain error. Id. at ¶ 126. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Stojetz (1999), 84 Ohio St.3d 452, 455. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.State v. D'Ambrosio (1995), 73 Ohio St.3d 141, 144; State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Thus, in order to reverse the conviction for prosecutorial misconduct, we must be persuaded that the defendant would not have been convicted but for the alleged misconduct. See State v. Slagle (1992), 65 Ohio St.3d 597,604-605.
 {¶ 14} Jeffrey argues that the prosecutor committed misconduct by raising issues involving appellant's post-arrest, post-Miranda silence. Jeffrey objects to questions asked of the detective on direct examination, questions the prosecutor asked him on cross-examination, and rebuttal testimony by the detective.
 {¶ 15} In the state's case in chief, the detective who interviewed both Jesse and Jeffrey testified regarding the steps he took in his investigation of the robbery. He testified that he interviewed the victim, then talked to officers on the scene to determine what had occurred. The detective testified that he interviewed Jesse first, who stated that he and his father were in Middletown driving around several strip-malls, looking for a baseball card shop. The detective then testified that he interviewed Jeffrey next and told him "that there was an attempted robbery at Cashland, and that there had been a phone call and some threats made to blow up Cashland if the teller didn't put the money out the back of the store." The detective testified that he told Jeffrey that he had been arrested for that offense.
 {¶ 16} In response to questioning, the detective then testified that during their discussions, Jeffrey did not mention that he was in Middletown looking for a specific shop to sell baseball cards, did not mention anything about baseball cards or the owner of the shop they were going to see. The detective then discussed the next steps in his investigation.
 {¶ 17} During the defense's case, Jeffrey testified that he and Jesse drove to Middletown to go to a card shop that had just opened. He testified that he met the owner, Steve Kennedy, at a card show the weekend before and wanted to sell some cards, and to see what the owner had in his store. He testified that he knew the general area and that he thought he could find the shop without specific directions. He stated that he and Jesse drove slowly around several shopping plazas looking for the card shop, and that they were looking for the shop when they were stopped by the police. He stated that they were told that they matched the descriptions of robbery suspects and were identified by the victim and another person.
 {¶ 18} Jeffrey testified that he was interviewed by the detective, but "we didn't say maybe a dozen words to each other." He indicated that he was scared, so he didn't say anything. He stated that he asked the detective "am I going to be arrested for this?" and when the detective said, "yes," he immediately asked for an attorney. However, Jeffrey then stated that from the time the police officer stopped him until he had the conversation with the detective and beyond, he denied any knowledge of the robbery.
 {¶ 19} On cross-examination, the prosecutor questioned Jeffrey regarding whether or not he and the detective had a conversation before he asked for an attorney. Jeffrey stated that there was no prior discussion with the detective, and that he walked into the interview room, sat down and told the detective that he wanted an attorney. Jeffrey contends that the detective told him there was an attempted robbery and that he was read his Miranda rights and asked immediately to see an attorney. He claimed the detective was on a "fishing expedition" so he asked for an attorney right away.
 {¶ 20} Jeffrey insisted that he immediately asked for an attorney and did not speak with the detective. He insisted any information the detective learned about him came from his son. When asked if he ever told the detective the story that he testified to on direct, Jeffrey again insisted that he did not talk to the detective at all.
 {¶ 21} The state called the detective to rebut Jeffrey's testimony. He testified that Jeffrey walked into the interview room knowing he was under arrest for robbery. According to the detective, he and Jeffrey began the interview with a general discussion about his address, date of birth, and other items, including work history, which they discussed in detail. He stated that Jeffrey's testimony that he immediately sat down and asked for an attorney was not true. He stated that after the general discussion, there was some more specific discussion about the facts of the case and why Jeffrey had been arrested. He stated that he told Jeffrey "there's an explanation for everything" and there are many reasons people do the things that they do, and that he would like to hear Jeffrey's side of the story. The detective then testified that he read Jeffrey his Miranda rights, and only then did Jeffrey ask for an attorney.
 {¶ 22} Pursuant to Doyle v. Ohio (1976), 426 U.S. 610,96 S.Ct. 2240, the state is prohibited from using a defendant's post-Miranda
silence to impeach an exculpatory story told for the first time at trial. Such evidence of silence cannot be used as substantive evidence of the defendant's guilt in the prosecution's case in chief. State v.Sabbah (1982), 13 Ohio App.3d 124. Likewise, the Ohio Supreme Court found that use of a defendant's post-arrest, pre-Miranda silence as part of the state's case in chief is a violation of the defendant's right to remain silent. State v. Combs (1991), 62 Ohio St.3d 278, 281-82.
 {¶ 23} However, using evidence of a defendant's pre-Miranda
silence to impeach his testimony is not a violation of due process when a defendant chooses to take the stand at trial. Fletcher v. Weir (1982),455 U.S. 603, 102 S.Ct. 1309; State v. Ospina (1992), 81 Ohio App.3d 641. This is because the defendant has not relied on Miranda warnings triggering the implicit assurance that his silence will not be used against him. Id.
 {¶ 24} Appellant first contends that it was prosecutorial misconduct for the prosecutor to elicit evidence in the state's case in chief regarding appellant's silence. We find that the prosecutor's questioning of the defendant was error. Although there are situations in which the defendant's silence may be used to impeach his testimony at trial, the defendant had not yet testified in this case. However, we find this error was harmless because, in opening statements, Jeffrey's counsel had already informed the jury that Jeffrey would be testifying and the contents of the anticipated testimony. Furthermore, the comments were made in the course of questioning regarding the process in which the detective investigated the robbery. The comments were brief and did not focus on appellant's invocation of his right to speak with an attorney.
 {¶ 25} Jeffrey next argues that it was error for the prosecutor to cross-examine him regarding his silence and for the detective to be recalled as a rebuttal witness. However, as mentioned above, a defendant's pre-Miranda silence may be used to impeach his testimony when he chooses to testify at trial. Fletcher v. Weir (1982), 455 U.S. 603,102 S.Ct. 1309. State v. Ospina (1992), 81 Ohio App.3d 641. While Jeffrey argues that the silence referred to was post-Miranda, no type of pre-trial motion was filed to resolve this factual dispute. Furthermore, even assuming arguendo that the silence referred to was post-Miranda, the admission of testimony about the silence was not error under the facts of this case. Appellant testified to his conversation with the detective, and stated that he immediately asked for an attorney, and stated that he did not say anything else because he was very scared. He also stated that he consistently denied being involved in the robbery from the time the vehicle was stopped.
 {¶ 26} Courts have distinguished the situation in Doyle by allowing evidence of post-Miranda silence to contradict a defendant's testimony that he did not talk to police. State v. Crossty (Mar. 4, 1987), Hamilton App. No. C-860297. Courts have also found that a defendant waives his Doyle rights if the issue of Miranda rights and post-arrest silence is raised by the defendant. State v. Vaughn (July 11, 1985), Cuyahoga App. No. 49272; State v. Pajevic (May 27, 1982), Cuyahoga App. No. 44141. In this case, the defendant raised the issue of whether or not he spoke to police and told them he was looking for a baseball-card shop in his own testimony. Thus, it was not error for the prosecutor to cross-examine Jeffrey regarding his testimony or to present the rebuttal testimony of the detective as evidence that the two had a discussion.
 {¶ 27} Jeffrey also argues that the prosecutor improperly referred to his (Jeffrey's) silence in closing argument. The prosecutor stated that Jeffrey was given a chance to explain what he was doing in Middletown, but didn't because he did not have an explanation for what occurred because he "did it."
 {¶ 28} A prosecutor is afforded wide latitude in closing arguments. State v. Jacks (1989), 63 Ohio App.3d 200, 210. The Ohio Supreme Court has also stated that a closing argument must be reviewed in its entirety to determine whether prosecutor's remarks were prejudicial. See State v. Loza (1994), 71 Ohio St.3d 61, 79, citing State v. Moritz
(1989), 63 Ohio St.2d 150, 157.
 {¶ 29} It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14; State v.Thayer (1931), 124 Ohio St. 1. However, we find that any alleged error in the prosecutor's comments was harmless. The issue of appellant's silence when speaking with the detective was discussed during the case. Appellant had the opportunity to explain that he did not tell the police his side of the story because he was scared and felt the detective was on a "fishing expedition." Moreover, the jury was repeatedly instructed that closing arguments were not evidence. It is presumed that the jury will follow the instructions given to it by the judge. Loza, at 79, citingState v.Henderson (1988), 39 Ohio St.3d 24, 33. Thus, we find no prejudicial error in the comments by the prosecutor.
 {¶ 30} Jeffrey also contends that the prosecutor erred by making various other comments made during closing arguments. He argues that the prosecutor vouched for the credibility of witnesses. The prosecutor made statements that Breeden "had no reason to lie and truthfully told you what took place," she "told you truthfully" what she saw and "I can guarantee one thing, as she's driving this way, she absolutely sees the pay phone."
 {¶ 31} One issue at trial revolved around a discrepancy in testimony between Breeden and appellants regarding whether the pay phone behind Cashland was visible from the spot where Breeden said she saw the two men. The prosecutor should not express personal opinions as to the credibility of a witness, nor should the prosecutor argue facts not in evidence. State v. Liberatore (1982), 69 Ohio St.2d 583, State v.Daugherty (1987), 41 Ohio App.3d 91. However, this statement was brief, in the context of an initial closing argument that spanned 12 pages of transcript, and in a rebuttal closing that spanned nine pages. In addition, the prosecutor's statements refer to the credibility of the witness, not to facts outside of the record. See State v. Tyler (1990),50 Ohio St.3d 24, 41. Thus, we find no prejudicial error in this comment by the prosecutor.
 {¶ 32} Next, Jeffrey argues that the prosecutor improperly denigrated defendants and defense counsel. Specifically, Jeffrey argues that the prosecutor improperly used an analogy that referred to defense counsel as "taking a stick into a river and stirring it all up" in an attempt to muddy the waters so the jury couldn't see clearly. Jeffrey also objects to comments referring to appellants' story as "laughable, ridiculous, and crazy" and "totally incredible testimony."
 {¶ 33} The Supreme Court of Ohio has held that inflammatory and purely derogatory comments are improper. State v. Liberatore (1982),69 Ohio St.2d 583, 589. The court has stated further, "[t]his precedent, however, does not mean the prosecution cannot be colorful or creative. What is not permitted are comments that are purely abusive."
 {¶ 34} The prosecutor's comments in this case were made in the context of outlining the evidence against appellants, and in contrasting the testimony of Breeden and appellants. We find these isolated comments, when viewed in the entirety of closing arguments, were not abusive or prejudicial. See State v. Smith (1997), 80 Ohio St.3d 89,111; State v. Tumbleson (1995), 105 Ohio App.3d 693, 699. Furthermore, despite Jeffrey's argument to the contrary, the prosecutor's "muddy water" analogy does not rise to the level of error found in State v.Smith (1984), 14 Ohio St.3d 13, 14-15. See, also, State v. Williams
(Mar. 7, 1996), Cuyahoga App. No. 68609. In Smith, the Court stated that prosecutorial misconduct occurred where the state not only described the defense as a smoke screen, but repeatedly described the defense as "lies," "garbage," "garbage lies," and a "well-rehearsed lie."
 {¶ 35} Jeffrey next argues that the prosecutor committed misconduct by referring to matters outside the record and by stating facts that were not true. In his rebuttal closing argument, the prosecutor told the jury that both sides had the opportunity to subpoena witnesses and that the defense could have subpoenaed Muhammed if they thought he would help their case because they were given his name and address months ago.
 {¶ 36} However, these comments were in response to defense counsel's comments in closing argument that the prosecution failed to present the testimony of Muhammed to corroborate Breeden's testimony. The prosecutor's comments simply explained that the defense could have called Muhammed as a witness if they felt his testimony would not corroborate Breeden's. Jeffrey objects to the fact that the prosecutor stated that the defense had Muhammed's address when discovery documents listed the address as "c/o Middletown Police Department." We find no error in this statement as there is no evidence Jeffrey was prejudiced by the lack of an exact address, and because the comments simply went to establish the fact that the defense could have subpoenaed Muhammed if they felt his testimony would be helpful to their case.
 {¶ 37} Jeffrey next objects to comments made by the prosecutor regarding testing done on the substance outside the back door of Cashland. During the detective's direct examination, the trial court sustained an objection to testimony regarding exactly what the lab told the detective regarding the substance. During his closing argument, the prosecutor stated that the detective testified that "he was informed by the lab that don't even bother, it's already gone. It's already evaporated."
 {¶ 38} However, on direct examination, the detective testified, without objection, that the lab said the samples had no value. On redirect, the detective was asked why the samples taken from behind the door "did not come out." He replied that "due to the evaporation of that type of flammable liquid, you would have to obtain samples within a short amount of time to be able to have it test positive." Thus, although the fact that the lab said the samples would have evaporated was not in evidence, the fact that the police found the samples useless because of evaporation was a fact in evidence. Accordingly, we find no prejudice to appellant in the prosecutor's remarks.
 {¶ 39} Finally, Jeffrey objects to improper use of his prior criminal convictions by the prosecutor. During rebuttal closing argument, the prosecutor commented, "Jeff Lamb, who has been convicted of theft twice previously." Jeffrey claims that this comment was "blatent use of the prior theft convictions as character evidence." We disagree. This language appears in the middle of a discussion regarding the discrepancy between the detective's story and Jeffrey's story about whether the two had a conversation before he asked for an attorney. In context, the remark appears to allude to Jeffrey's credibility, not to his acting in conformity with his prior character in the present case. See State v. Williams (1986), 23 Ohio St.3d 16, 20; State v. Watson,61 Ohio St.3d 1, 9.
 {¶ 40} In conclusion, we find that there was no prejudicial error affecting Jeffrey's rights in any of the prosecutor's remarks, much less any misconduct rising to the level of plain error. Accordingly, Jeffrey's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 41} "DEFENDANT-APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION RESULTING IN PREJUDICE."
 {¶ 42} In his second assignment of error, Jeffrey contends that his trial counsel was ineffective in three ways. To decide appellant's claim of ineffective assistance of counsel, we must apply the two-tier test of Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, Jeffrey must show that counsel's actions were outside the wide range of professionally competent assistance. Second, Jeffrey must show that he was prejudiced as a result of counsel's actions. Id. at 689. Prejudice will not be found unless Jeffrey demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
 {¶ 43} Jeffrey first argues that his trial counsel was ineffective by failing to object to prosecutorial misconduct. As mentioned in the previous assignment of error, none of the alleged instances of prosecutorial misconduct prejudicially affected Jeffrey's substantial rights. Therefore, we find that trial counsel was not ineffective for failing to object to the alleged instances of prosecutorial misconduct.
 {¶ 44} Second, Jeffrey argues that his trial counsel was ineffective for failing to file a motion to suppress evidence. He argues that trial counsel should have filed a motion to suppress statements he made to the detective who interviewed him. He argues that the detective's testimony that Jeffrey told him about employment difficulties prejudiced him because it suggested a motive for the robbery. Jeffrey argues that based on the detective's testimony, this discussion took place beforeMiranda warnings were given, and was a custodial interrogation that should have been suppressed.
 {¶ 45} We begin our analysis of this issue by noting that the "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Madrigal, 87 Ohio St.3d 378,389, 2000-Ohio-448, citing Kimmelman v. Morrison (1986), 477 U.S. 365,384, 106 S.Ct. 2574. The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made. State v. Robinson (1996),108 Ohio App.3d 428, 433; State v. Blagajevic (1985), 21 Ohio App.3d 297,299-300. Even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if "the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act." State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 46} Jeffrey's argument on this issue fails for several reasons. First, there is no evidence that a custodial interrogation took place before Miranda warnings were read to Jeffrey. According to the detective, this portion of the interview consisted of general questions, such as name, address, date of birth, social security number and employment history. This type of questioning does not amount to custodial interrogation. Pennsylvania v. Muniz (1990), 496 U.S. 582,110 S.Ct. 2638; State v. Collins (Dec. 2, 1991), Butler App. No. CA90-10-208.
 {¶ 47} Second, according to Jeffrey's own testimony, he denied making any type of statement at all to the detective. He contends that any information about things such as his employment came from the detective's interview with Jesse. Thus, we find no merit to Jeffrey's argument that his trial counsel was ineffective for failing to file a motion to suppress his statements to the detective.
 {¶ 48} In his final argument under this assignment of error, Jeffrey contends that his trial counsel was ineffective for failing to file a motion to suppress Breeden's identification of Jeffrey as the person she saw behind Cashland. He contends that Breeden did not have adequate opportunity to observe the men before being taken to the place where his vehicle was stopped; that she testified initially that she was unable to identify Jeffrey with certainty at the stop; and that she was heard on the 911 tape asking Muhammed "what did the other guy have on?" Jeffrey also argues that he and Jesse were the only two suspects presented to Breeden for identification.
 {¶ 49} To warrant suppression of identification testimony, the defendant bears the burden of establishing that the identification procedure was unreliable under the totality of the circumstances and "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers (1972), 409 U.S. 188,199, 93 S.Ct. 375, 382. Generally, a confrontation is unnecessarily or unduly suggestive when the witness has been shown but one subject. Mansonv. Brathwaite (1977), 432 U.S. 98, 115, 97 S.Ct. 2243, 2253. However, even if a confrontation is unnecessarily or unduly suggestive, identification testimony is not inadmissible solely for that reason. Instead, the reliability of the testimony is the linchpin in determining its admissibility. Biggers at 115, 97 S.Ct. at 2253. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process. Id.
 {¶ 50} Reliability of a witness's identification is determined by examining whether the identification was unreliable under the totality of the circumstances. State v. Poole (1996), 116 Ohio App.3d 513, 522,688 N.E.2d 591. Factors that are relevant to this inquiry include: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of the witness's certainty at the confrontation; and (5) the length of time between the crime and the confrontation. Id. In order to suppress an identification, the court must find that the procedure employed was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Biggers at 198-199, 93 S.Ct. at 381-382.
 {¶ 51} Considering the totality of the circumstances, we cannot say that the identification was so suggestive that the failure to file a motion to suppress was ineffective assistance of counsel. Although Jeffrey and Jesse were the only suspects shown to Breeden, they were stopped by police driving a vehicle that exactly matched the description given by Breeden. The jacket and hat described by Breeden were found in the vehicle. Breeden testified that she immediately identified Jesse as the driver of the car. She stated that she was not initially sure that Jeffrey was the second person until police held up the hat found under the seat to his head. She stated that after viewing Jeffrey with the hat, she had no doubt that he was the man she saw behind Cashland. These circumstances do not create a situation so suggestive as to give rise to a misidentification. Jeffrey's second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 52} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FAILING TO INTERVENE, SUA SPONTE, WHERE THE STATE COMMITTED FLAGRANT AND REPEATED PROSECUTORIAL MISCONDUCT, WHICH FAILURE DENIED DEFENDANT-APPELLANT THE RIGHT TO DUE PROCESS AND A FAIR TRIAL PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 53} Jeffrey argues that although trial counsel failed to object, the prosecutor's conduct was "blatent and persistent" and the trial court had a duty to intervene in the "numerous and flagrant instances of prosecutorial misconduct."
 {¶ 54} Where gross and abusive conduct occurs during closing arguments, the trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct. Pesek v. UniversityNeurologists Assoc., Inc. (2000), 87 Ohio St.3d 495, 500. However, the prosecutor's comments, while occasionally questionable, did not rise to the level of abusive or outrageous conduct so as to prejudice the jury. Accordingly, the trial court did not have a duty to correct the effect of the prosecutor's actions. Jeffrey's third assignment of error is overruled.
Assignment of Error No. 4
 {¶ 55} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ADMITTING THE TESTIMONY OF DANIELLE BREEDEN REGARDING THE CONTENTS OF A TELEPHONE CALL WITHOUT ADEQUATE FOUNDATION."
 {¶ 56} Jeffrey contends that the trial court erred by allowing Breeden to testify regarding the contents of the threatening call to Cashland because there was not a sufficient foundation identifying the caller. Breeden testified that she received a phone call from an unidentified male caller. When she began to testify regarding what the male caller said, defense counsel objected on hearsay grounds. The trial court overruled the objection.
 {¶ 57} Appellant now argues that it was error for the trial court to allow testimony about the phone conversation, not for hearsay reasons, but because the caller was not properly identified, the call was not authenticated.
 {¶ 58} Evidence Rule 901, which governs authentication, is applicable to telephone calls, and provides a liberal standard for the authentication of telephone calls. State v. Vrona (1988),47 Ohio App.3d 124, 149. "Telephone conversations are admitted where the identity of the parties is satisfactorily explained." State v. Williams
(1979), 64 Ohio App.2d 271. There is no fixed identification requirement for all calls because each case has its own set of facts. Vrona,47 Ohio App.3d at 149.
 {¶ 59} The threshold standard for authenticating evidence pursuant to Evid.R. 901 is low and does not require conclusive proof of authenticity, but requires only sufficient foundational evidence from which the trier of fact could conclude that the evidence is what the proponent claims it to be. State ex rel. Montgomery v. Villa (1995),101 Ohio App.3d 478, 485. Circumstantial evidence, as well as direct evidence, may be used to show authenticity. Id. A trial court has broad discretion in admitting evidence. State v. McGuire (1997),80 Ohio St.3d 390, 400-01. An appellate court will not reverse a trial court's decision on the admission of evidence absent an abuse of discretion. State v. Martin (1985), 19 Ohio St.3d 122, 129.
 {¶ 60} We find no error in the trial court's decision to admit evidence of the telephone call. Breeden testified that she received a call from an unidentified male caller threatening to blow up the building if cash was not placed outside the back door. After Breeden ran from the building, she observed two men, who she later identified as Jesse and Jeffrey Lamb, behind the building and on the pay phone. The two men ran when they were seen and left in a vehicle which Breeden identified to the police. Given these circumstantial facts, there was sufficient evidence from which the jury could find that Jeffrey and Jesse made the phone call to support an authentication of the phone call. Jeffrey's fourth assignment of error is overruled.
Assignment of Error No. 5
 {¶ 61} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S CRIMINAL RULE 29 MOTION AT THE CLOSE OF THE STATE'S CASE."
 {¶ 62} In his fifth assignment of error, Jeffrey contends that the trial court erred in denying his Crim.R. 29 motion when there was insufficient evidence to connect him with the threat to blow up Cashland. When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511,525. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 63} Jeffrey was charged with robbery pursuant to R.C.2911.02(A)(3), which states, "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another." The state can use either direct evidence or circumstantial evidence to prove the elements of a crime. See, e.g., State v. Durr
(1991), 58 Ohio St.3d 86, 92. Circumstantial and direct evidence are of equal probative value. Jenks at paragraph one of the syllabus.
 {¶ 64} Jeffrey argues that the evidence was not sufficient to connect him to the threatening phone call. However, we find there was sufficient evidence from which the jury could find that Jeffrey and Jesse were responsible for the threatening call to Cashland. After receiving the call, Breeden left Cashland and drove behind the building where she observed Jesse peeking around to the back door and Jeffrey hanging up the pay phone. The two ran to the Camaro and left the area. Given this circumstantial evidence, the jury reasonably could have found that the elements of the offense of robbery were met. Accordingly, the trial court did not err in overruling Jeffrey's Crim.R. 29 motion. Jeffrey's fifth assignment of error is overruled.
Assignment of Error No. 6
 {¶ 65} "INSUFFICIENT EVIDENCE WAS PRESENTED OF DEFENDANT-APPELLANT'S GUILT AND THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 66} In his sixth assignment of error, Jeffrey challenges both the sufficiency of the evidence and the manifest weight of the evidence. In the previous assignment of error, we found that the evidence was sufficient to find that Jeffrey committed robbery in violation of R.C.2911.02(A)(3). Thus, we find no merit to Jeffrey's sufficiency of the evidence argument.
 {¶ 67} Jeffrey also argues that the verdict was against the manifest weight of the evidence because the defendants' testimony was "reasonable and consistent with the evidence." An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 389. The standard for reversal of a verdict which is against the manifest weight of the evidence has been summarized as follows:
 {¶ 68} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 69} Thompkins at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 70} Although the defendants stated that they never got out of their car, were not behind Cashland, and provided an explanation for being in Middletown and driving slowly through parking lots, the jury was not required to believe their testimony. Instead, the jury reasonably found Breeden's testimony and description of the men she had seen behind Cashland more credible and found the defendants guilty. This decision on credibility was within the province of the jury and was not error. Based on Breeden's testimony, the jury's decision was not against the manifest weight of the evidence. Jeffrey's sixth assignment of error is overruled.
Assignment of Error No. 7
 {¶ 71} "THE CUMULATIVE EFFECT OF ERRORS IN THE PROCEEDINGS BELOW DENIED DEFENDANT-APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."
 {¶ 72} In his seventh and final assignment of error, Jeffrey contends that even if this court finds the errors in the previous assignments of error were harmless, the cumulative effect of these errors resulted in unfair prejudice. The Supreme Court of Ohio has recognized the doctrine of cumulative error when numerous "harmless errors" are combined. State v. DeMarco (1987), 31 Ohio St.3d 191, 197. In order for the doctrine of cumulative error to be applicable, however, an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court. Id.
 {¶ 73} This court has carefully reviewed the trial transcript and the various arguments raised on appeal and finds that the cumulative effect of any errors committed at trial does not rise to the level of prejudicial error. Jeffrey's seventh assignment of error is overruled.
 {¶ 74} Jesse's Appeal
 {¶ 75} In his separate appeal, Jesse raises five assignments of error.
Assignment of Error No. 1
 {¶ 76} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ALLOWED CERTAIN HEARSAY TESTIMONY TO BE ENTERED INTO EVIDENCE."
 {¶ 77} In his first assignment of error, Jesse contends that the trial court erred in allowing Breeden to testify regarding what the caller to Cashland said during the telephone call. Jesse argues that the trial court should not have allowed the testimony because it was inadmissible hearsay. During the trial, the court overruled a hearsay objection to the testimony.
 {¶ 78} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Not only must the statement have been made by someone other than the testifying witness, and be repeated by the witness on the stand, but the reiterated statement "must derive its primary value by showing the truth of the matter asserted." State v. Durr (1991), 58 Ohio St.3d 86, 91, citing Potter v. Baker (1955), 162 Ohio St. 488; Digital AnalogDesign Corp. v. North Supply Co. (1989), 44 Ohio St.3d 36, 42.
 {¶ 79} In this case, the statements were offered not to prove that someone was being held hostage outside Cashland by men who would blow the building up if cash was not placed outside the door, but instead to show that a threat was made. "A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents." State v. Williams (1988), 38 Ohio St.3d 346, 348. Breeden's statements attributable to the defendants were "verbal acts," offered to prove that the words were spoken, rather than to prove the truth of the matter asserted. See id. The very act of uttering those words constituted a threat. Whether the defendants actually intended to blow up Cashland or whether the caller was being held hostage were not issues in controversy. Therefore, the testimony was not within the definition of hearsay. Jesse's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 80} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED TESTIMONY AND ARGUMENT REGARDING APPELLANT'S POST-ARREST SILENCE."
 {¶ 81} In his second assignment of error, Jesse claims that it was plain error to allow the detective to testify regarding Jeffrey's post-Miranda silence. He contends that this testimony had a prejudicial effect on him because it allowed the state to argue that the two presented conflicting stories of why they were in Middletown.
 {¶ 82} However, for the reasons discussed with respect to Jeffrey's first assignment of error, we find that Jesse was not prejudiced by this testimony at trial. Jesse's second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 83} "DEFENDANT-APPELLANT WAS DEPRIVED OF A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 {¶ 84} In his third assignment of error, Jesse contends that the state committed prosecutorial misconduct by discussing witnesses testifying truthfully, discussing how the defense could have called Muhammed as a witness, and discussing Jeffrey's post-arrest silence. Because we have already found no merit to these arguments in response to Jeffrey's first assignment of error, we overrule Jesse's third assignment of error on the same basis.
Assignment of Error No. 4
 {¶ 85} "THE DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 86} In his fourth assignment of error, Jesse contends that his trial counsel was ineffective for failing to object to the state's improper questions, comments and arguments involved in his second and third assignments of error. Again, we have already found these same arguments to be without merit in response to Jeffrey's second assignment of error. Accordingly, Jesse's fourth assignment of error is overruled.
Assignment of Error No. 5
 {¶ 87} "THE CUMULATIVE ERROR DEPRIVED DEFENDANT-APPELLANT OF A FAIR TRIAL."
 {¶ 88} In his final assignment of error, Jesse contends that the cumulative effect of non-prejudicial errors denied him of a fair trial. As discussed in response to Jeffrey's seventh assignment of error raising the same issue, this court has carefully reviewed the trial transcript and the various arguments raised on appeal and finds that the cumulative effect of any errors committed at trial does not rise to the level of cumulative error. Thus, Jesse's fifth assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.